IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND D. JACKSON, SR.,

    Plaintiff,                    No. CIV S-05-1822 GEB JFM P

vs.

J. WOODFORD, et al.,

    Defendants.             <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his constitutional rights by "losing and/or concealing" legal documents necessary to challenge his criminal conviction. (Complaint, filed September 12, 2005, at 5.)[1] This matter is before the court on cross-motions for summary judgment and on plaintiff's motion for injunctive relief.

I. <u>Cross Motions for Summary Judgment</u>

        As noted above, plaintiff claims that defendants violated his constitutional rights by "losing and/or concealing" legal documents necessary to challenge his criminal conviction.

---

[1] Plaintiff identifies three separate federal constitutional claims in his complaint, one for interference with his right to access the courts and two separate First Amendment claims based on the same facts. Under existing federal law, plaintiff's allegations give rise to one colorable federal claim for interference with his constitutional right to access the courts.

1

(Complaint, filed September 12, 2005, at 5.) Plaintiff raises three separate federal constitutional claims in his complaint, one for actual injury to his right to access the courts and the other two under the First Amendment for denying him the right to petition the government for redress of his criminal conviction and for chilling his freedom of speech by denying him access to the courts.

Defendants seek summary judgment on the grounds that (1) plaintiff's claims are barred by the statute of limitations; (2) plaintiff did not suffer any actual injury to his right of court access; (3) none of them were personally involved in the loss of plaintiff's documents; and (4) they are entitled to qualified immunity. Plaintiff seeks summary judgment on the grounds that defendants' acts and omissions caused him actual injury and irreparable harm.

A. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

1  immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as
2  whatever is before the district court demonstrates that the standard for entry of summary
3  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

4  If the moving party meets its initial responsibility, the burden then shifts to the
5  opposing party to establish that a genuine issue as to any material fact actually does exist. See
6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
7  establish the existence of this factual dispute, the opposing party may not rely upon the
8  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
9  form of affidavits, and/or admissible discovery material, in support of its contention that the
10 dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party
11 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
12 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
13 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
14 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
15 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
16 1436 (9th Cir. 1987).

17 In the endeavor to establish the existence of a factual dispute, the opposing party
18 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
19 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
20 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
21 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
22 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
23 committee's note on 1963 amendments).

24 In resolving the summary judgment motion, the court examines the pleadings,
25 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
26 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

1  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
2  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
3  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
4  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
5  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
6  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
7  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
8  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
9  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
10             On December 21, 2005, the court advised plaintiff of the requirements for
11  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.
12  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and
13  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).
14       B. Analysis
15           1. Statute of Limitations
16             California law determines the applicable statute of limitations in this § 1983
17  action.  See Wilson v. Garcia, 471 U.S. 261 (1985).  Until December 31, 2002, the applicable
18  state limitations period was one year.  See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004)
19  (citing Cal.Civ.Proc.Code § 340(3) (West Supp. 2002); see also Maldonado v. Harris, 370 F.3d
20  945, 954-55 (9th Cir. 2004).  Effective January 1, 2003, the applicable California statute of
21  limitations was extended to two years.  See Jones, 393 F.3d at 927 (citing Cal.Civ.Proc.Code §
22  335.1).  California law also tolls for two years the limitations period for inmates "imprisoned on
23  a criminal charge, or in execution under the sentence of a criminal court for a term less than for
24  life."  Cal.Civ.Proc.Code § 352.1.  "The California courts have read out of the statute the
25  qualification that the period of incarceration must be 'for a term less than for life' in order for a
26  prisoner to qualify for tolling."  Jones, at 927 n.5 (citations omitted).  The limitation period is

also tolled while an inmate is exhausting administrative remedies as required by 42 U.S.C. § 1997e(a).  See Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run.  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).  Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'"  Id. (citations omitted).

For purposes of the statute of limitations analysis, the court accepts as true the facts in plaintiff's complaint that are relevant to the statute of limitations analysis.[2]  The facts set forth in this section are all drawn from plaintiff's complaint.

On or about December 6, 1999, plaintiff filed an administrative grievance complaining that staff at California Medical Facility (CMF) in Vacaville had lost legal materials belonging to plaintiff and necessary to challenge his criminal conviction.  On January 4, 2000, plaintiff's grievance was granted at the first level of administrative review.  The first level reviewer, who is not a defendant in this action, found that CMF staff was responsible for the loss of plaintiff's legal materials, and he directed plaintiff to proceed to the second level of review to expedite the process of purchasing replacement copies of the lost documents.  At the second level of review, the appeal was modified and denied.  Plaintiff proceeded to the third level and final level of administrative review.  On March 20, 2001, a final administrative decision was issued.  That decision provided, inter alia, that the institution would pay for the lost documents if they were located.  The decision noted that prison staff had contacted a photocopy service that had previously copied transcripts and that staff with the copy service were attempting to locate the transcripts.

Starting in June 2001, defendant Cry was in charge of the efforts to locate replacements for plaintiff's lost legal materials.  Subsequently, defendant Cry and plaintiff

---

[2] This action is proceeding on plaintiff's complaint, filed September 12, 2005.

5

learned that "a substantial number of documents" copied by the copy service belonged to different inmate with the same name as plaintiff. (Complaint, filed September 12, 2005, at 7.) In November 2001, defendant Cry sent to defendant Valadez a memorandum containing this information. In the memorandum, he explained that defendants Cry and Williams had met on October 31, 2001, with a deputy attorney general concerning plaintiff's lost legal materials and that the deputy attorney general's "recommendation was to assure that plaintiff received ALL of the correct items he claimed to have lost." (Id. at 8 (emphasis in original).)

On February 4, 2004, plaintiff encountered defendant Cry in a stairway at CMF. He asked defendant Cry about the status of his legal documents. At that point, defendant Cry told him that all of the documents had been sent to the attorney general's office a year earlier and that plaintiff's appeal was closed. Plaintiff made several attempts by letter to defendants Cry and Williams to locate documents belonging to plaintiff that had been sent to the attorney general's office. In April 2004, defendant Williams told plaintiff there was nothing else that could be done to locate the documents. Defendant Williams repeated this to plaintiff in May 2004. Thereafter, plaintiff pursued another round of administrative appeals. On July 20, 2004, defendant Grannis returned the documents filed in connection with the appeal to plaintiff without taking any action on the appeal.

On July 24, 2004, plaintiff filed a petition for writ of mandate in the Solano County Superior Court. On October 13, 2004, the attorney general filed a response to the petition. On November 15, 2004, the state superior court denied the petition. In the order, the court found that respondent "had assured the court that it was unable to locate plaintiff's lost legal documents." (Complaint, at 13.) Plaintiff then filed a petition for writ of mandate in the state court of appeal, which was denied on December 22, 2004 for failure to exhaust administrative remedies. Plaintiff then commenced another round of administrative appeals. Between December 22, 2004 and March 21, 2005, plaintiff attempted to pursue administrative remedies by submitting documents and sending letters to defendants Cry, Schwartz, Grannis,

Woodford. Plaintiff did not obtain relief through this process, so he returned to state court. On July 29, 2005, the California Supreme Court denied a petition for writ of mandate "without comment." (Id. at 16.) Plaintiff filed the instant action on September 12, 2005.

Plaintiff claims that defendants Cry and Williams violated his constitutional rights by "willingly" refusing to replace legal documents belonging to plaintiff and necessary to prove his actual innocence of his commitment offense, and that defendants Woodford, Schwartz, Valadez, and Grannis unlawfully ratified these constitutional violations.[3]

In support of contention that this action is barred by the statute of limitations, defendants contend that plaintiff's claim accrued on December 2, 1999, the date on which plaintiff discovered that his legal materials were missing. That contention is without merit.[4]

The gravamen of plaintiff's claim against the defendants before the court is that they willfully failed to locate or replace the missing documents. With respect to defendants Cry and Williams, this claim accrued not later than July 20, 2004. The complaint demonstrates that plaintiff knew by February 4, 2004 that defendant Cry was taking the position that nothing further could be done to replace plaintiff's legal materials, and by May 20, 2004, that defendant Williams was taking the same position. See Complaint, at 8-11. Thus, plaintiff's claim against defendant Cry accrued on or about February 4, 2004, and his claim against defendant Williams accrued on or about May 20, 2004. The actions of all other defendants occurred after the date on which plaintiff's claims against defendant Cry and Williams accrued.

As noted above, as of January 1, 2003, the applicable limitations period in California was two years. Even without any statutory tolling or tolling for administrative

---

[3] Defendants Melching and Ramirez-Palmer have been voluntarily dismissed from this action by plaintiff's May 24, 2006 motion to dismiss. See Fed. R. Civ. P. 41(a)(1).

[4] Defendants also contend that plaintiff is not entitled to the benefit of the two year tolling provision of California Code of Civil Procedure § 352.1 because he is serving a sentence of life in prison without possibility of parole. While that contention also appears to be without merit, see Jones v. Blanas, 393 F.3d at 927 n.5, application of § 352.1 is unnecessary to render plaintiff's claims timely.

7

exhaustion, the earliest the limitation period ran on any of plaintiff's claims was February 4, 2006. This action was filed on September 12, 2005, well before that date.

For the foregoing reasons, defendants' contention that this action is barred by the statute of limitations is without merit. Defendants are not, therefore, entitled to summary judgment on this ground.

2. Actual Injury

Defendants' second contention in support of their motion for summary judgment is that plaintiff has not suffered any actual injury to his right to access the courts due to any of the events complained of. Plaintiff contends that defendants' failure to replace missing legal materials has caused actual injury to his efforts to obtain DNA testing and prove that he is actually innocent of his commitment offenses.

The parties direct the court's attention to three actions plaintiff has pending, one in the California Supreme Court, one in the United States Court of Appeals for the Ninth Circuit, No. 06-56398, and one in the Central District of California, Case No. 05-2616 CAS (CW). Plaintiff testified at his deposition that the state supreme court action is a petition for writ of habeas corpus that was still pending at the time of his deposition, and that the documents could be used to supplement that petition. (Ex. A to Defendants' Statement of Undisputed Material Facts, filed March 13, 2007, Deposition of Raymond D. Jackson, Sr., at 69.) Plaintiff also testified that the missing documents would be necessary for a "petition" pending before the United States Court of Appeals for the Ninth Circuit, and for a civil rights action brought in the United States District Court for the Central District of California under 42 U.S.C. § 1983 by which he seeks to compel the state "to produce the DNA evidence in [his] case." (Id. at 73.) Defendants contend that unless and until plaintiff loses any of the three actions for failure to present the missing documents, he cannot demonstrate actual injury to his right to access the courts.

/////

1  In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court held
2 that prison inmates have a constitutionally protected right to access the courts to bring civil rights
3 actions to challenge their conditions of confinement and to bring challenges to their criminal
4 convictions. Lewis v. Casey, 518 U.S. at 351. The right of access to the courts "guarantees no
5 particular methodology but rather the conferral of a capability -- the capability of bringing
6 contemplated challenges to sentences or conditions of confinement before the courts." Id. at 356.
7 To prevent summary judgment for defendants, plaintiff must present evidence, sufficient to
8 create a genuine issue of material fact, that defendants by their acts prevented him from bringing,
9 or caused him to lose, an actionable claim of this type. Id.
10  In opposition, plaintiff presents evidence that the California Supreme Court
11 habeas corpus petition was denied on March 14, 2007 in an order citing to California's timeliness
12 rules. Plaintiff contends this denial "was as a direct result" of plaintiff's failure to present the
13 state supreme court with a copy of a habeas corpus petition that he filed in 1996. (Plaintiff's
14 Opposition to Defendants' Motion for Summary Judgment, filed April 12, 2007, at 12.)
15 Plaintiff's contention is not supported by the evidence. To the contrary, exhibits filed by plaintiff
16 in support of his motion for summary judgment demonstrate that since 1996 the state courts have
17 at every level of review rejected petitions for writ of habeas corpus filed by petitioner on the
18 ground that, inter alia, the petitions were untimely. See Plaintiff's Exs. 42, 43, 44. Plaintiff's
19 exhibits further demonstrate that plaintiff was convicted of his commitment offenses in 1981, see
20 Plaintiff's Ex. 42, and that by December 1996 he had filed three federal habeas corpus petitions
21 in the United States District Court for the Central District of California, the last of which was
22 denied as a successive petition. See Plaintiff's Exs. 45 and 46. Given these facts, there is simply
23 no evidence to support plaintiff's assertion that his most recent petition to the California
24 Supreme Court was rejected because he did not present that court with a copy of an earlier filed
25 habeas corpus petition.
26 /////

The action pending in the United States Court of Appeals for the Ninth Circuit was an appeal from an August 10, 2006 decision of a judge of the United States District Court for the Central District of California denying a fourth petition for writ of habeas corpus filed by petitioner in that court. See Plaintiff's Motion for Summary Judgment, filed March 6, 2007, at 23 (identifying U.S. Court of Appeals Case Number 06-56398).[5] On March 27, 2007, the court of appeals denied plaintiff's request for a certificate of appealability in that case. There is no evidence that plaintiff's failure to present missing legal materials either to the United States Court of Appeals for the Ninth Circuit or to the United States District Court for the Central District of California was the cause of either court's disposition of the matters tendered by plaintiff.

Finally, court records in the United States District Court for the Central District of California show that the civil rights action filed by plaintiff in that court in 2005 was dismissed by the district court on May 4, 2007.[6] The dismissal was grounded in a finding that plaintiff was "barred from relitigating . . . the reasonable availability of the biological evidence he seeks, an issue which the state court decided against him." (Findings and Recommendations, filed March 30, 2007, in Case No. 05-2616 CAS (CW), at 12, adopted by Order filed May 4, 2007.) Again, there is no evidence that the unavailability of plaintiff's missing legal materials had anything to do with this disposition.

For all of the foregoing reasons, there is no evidence that defendants' inability to replace plaintiff's lost legal documents caused any "actual injury" to plaintiff's right to access the

/////

/////

/////

---

[5] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[6] The court make take judicial notice of these records. See footnote 4, supra.

courts.[7] Accordingly, defendants are entitled to summary judgment on plaintiff's federal constitutional claim.

### 3.  Personal Involvement of Defendants

Defendants' third contention in support of summary judgment is that none of them were involved in a violation of plaintiff's constitutional rights. Specifically, defendants contend that the only individuals who might be liable to plaintiff are those who lost his documents. Defendants contend that neither defendants Cry nor Williams violated plaintiff's constitutional rights by failing to find the lost documents, and that the other defendants cannot be found liable to plaintiff as their only role in the events complained of was in processing plaintiff's later filed administrative grievances. Since plaintiff did not suffer any actual injury to his right to access the courts, the court need not decide on this record whether the only state officials who may be liable for such a constitutional violation are those who lose, rather than those who fail to replace, an inmate's legal materials.

### 4.  Qualified Immunity

Defendants' fourth contention is that they are entitled to qualified immunity. State officials are "entitled to qualified immunity from § 1983 claims unless (1) their alleged conduct violated a constitutional right, and (2) that right was clearly established. . . . In determining whether a right was clearly established, we do not consider the right as a '"general proposition."' . . . Rather, '"[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Edgerly v. City and County of San Francisco, __ F.3d __, 2007 WL 2034040, slip op. at 6 (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

/////

---

[7] It appears that in 2002 an attorney was appointed to represent plaintiff in state court proceedings pursuant to California Penal Code § 1405, by which plaintiff sought DNA testing. See Plaintiff's Ex. 16. It appears that petition was denied. See Petitioner's Ex. 40.

For the reasons set forth above, defendants are entitled to summary judgment on the federal constitutional claim raised in this action.[8]  The conduct of these defendants did not violate plaintiff's constitutional rights and "there is no necessity for further inquiries concerning qualified immunity" as to these claims.  <u>Saucier</u>, at 201.

        5.  <u>Pendent State Law Claims</u>

For the reasons set forth above, defendants are entitled to summary judgment on plaintiff's federal constitutional claim.  Accordingly, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.  <u>See</u> 28 U.S.C. § 1367©.

II.  <u>Plaintiff's Motion for Injunctive Relief</u>

On September 14, 2006, plaintiff filed a motion for preliminary injunction seeking an order compelling defendants to forward to plaintiff a copy of a petition for writ of habeas corpus that he filed in the Los Angeles Superior Court in 1996 or to purchase a copy of said petition.

The legal principles applicable to a request for injunctive relief are well established.  To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor.  <u>See</u> <u>Coalition for Economic Equity v. Wilson</u>, 122 F.3d 692, 700 (9th Cir. 1997); <u>Oakland Tribune, Inc. v. Chronicle Publ'g Co.</u>, 762 F.2d 1374, 1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown.  <u>Oakland Tribune</u>, 762 F.2d at 1376.  "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury."  <u>Id.</u>  In the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits.  <u>Id.</u>

/////

---

[8] <u>See</u> footnote 1, <u>supra</u>.

For the reasons set forth in section I of these findings and recommendations, plaintiff can make neither showing required for a preliminary injunction. Accordingly, his motion should be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that

1. Plaintiff's September 14, 2006 motion for preliminary injunction be denied;

2. Plaintiff's March 6, 2007 motion for summary judgment be denied; and

3. Defendants' March 13, 2007 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 20, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

12
jack1822.57